NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DEMETRIC L., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.M., *Appellees*.

No. 1 CA-JV 18-0038
FILED 7-19-2018

Appeal from the Superior Court in Maricopa County
No. JD31637
The Honorable Jeanne M. Garcia, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Attorney at Law, Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Chief Judge Samuel A. Thumma and Judge James P. Beene joined.

---

**M O R S E**, Judge:

¶1        Demetric L. ("Father") appeals the juvenile court's order terminating his parental rights to A.M.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Father and Sahara W. ("Mother") are the biological parents of A.M., born January 29, 2013.[1]  In November 2015, the Department of Child Safety ("DCS") removed A.M. from Mother's custody due to allegations of neglect and substance abuse.  At the time, Father's whereabouts were unknown.

¶3        DCS filed a dependency petition and the court found A.M. dependent as to Father due to abandonment.  In March 2016, Father advised the court he would be relocating to Arizona and requested visitation with A.M.  He agreed to submit to a rule-out urinalysis test and hair follicle test.  Father tested positive for amphetamine, methamphetamine, marijuana, cocaine, and alcohol.

¶4        A.M. displayed an increase in aggressive behaviors after visits with Father, and she threw temper tantrums on the dates visits were scheduled.  In April 2016, Father told the parent aide that he wanted to cancel his visits with A.M. but changed his mind several days later and agreed to visit her once per week.  After visiting her twice in May 2016, Father's visits were closed out and he did not inquire about visits until June 2016.  A.M.'s behavior problems drastically improved after visits with Father stopped.  Father then did not maintain contact with DCS; DCS could not establish contact with Father until April 2017 when family members reported that Father was incarcerated in California.  The case plan was

---

[1] Mother's parental rights were also terminated, but Mother is not a party to this appeal.

changed to severance and adoption, and DCS moved to terminate Father's parental rights on multiple grounds, including abandonment.

**¶5**      After being released from incarceration, Father requested visits with A.M. However, because of A.M.'s previous behavioral issues after visiting Father and Father's lack of stability, DCS determined that the visits should be therapeutic and required Father to begin participating in services before visits could begin. Father refused to participate in services, and he did not establish a residence in Arizona nor maintain a stable phone number, making it difficult for DCS to contact him.

**¶6**      At a three-day termination hearing, Father testified that he tried to maintain contact with A.M., but DCS was unresponsive to his requests for visitation and never provided him with services. A DCS case manager testified that she tried to contact Father numerous times, but the phone numbers he provided went straight to voicemail or were disconnected. Further, the case manager testified that Father did not maintain contact with DCS or provide support for A.M. for more than six months prior to the termination hearing, and that Father cannot provide for A.M. because he failed to establish stable housing and has not participated in services.

**¶7**      The superior court terminated Father's parental rights in January 2018, finding DCS proved by clear and convincing evidence the statutory grounds of abandonment, prolonged substance abuse, nine months out-of-home placement, and fifteen months out-of-home placement. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(1), (3), (8)(a), and (8)(c). The court also found the termination of Father's rights to be in the child's best interests. *See* A.R.S. § 8-533(B).

**¶8**      Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

**¶9**      We view the evidence "in a light most favorable to affirming the trial court's findings." *Maricopa Cty. Juv. Action No. JS-8490*, 179 Ariz. 102, 106 (1994). We will uphold the juvenile court's findings of fact unless they are unsupported by reasonable evidence, and we will affirm a severance order unless it is clearly erroneous. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶10**      The superior court may terminate parental rights if DCS proves one statutory ground set out in A.R.S. § 8-533(B) by clear and

convincing evidence, *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000), and that termination is in the child's best interests by a preponderance of the evidence, *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005).

**¶11** Father argues the superior court erred by finding DCS proved the grounds for abandonment, prolonged substance abuse, and nine and fifteen months out-of-home placement. Because we conclude sufficient evidence supports the ground of abandonment, we do not address Father's arguments regarding the other grounds. *Jesus M.*, 203 Ariz. at 280, ¶ 3.

## I. Abandonment

**¶12** In addressing severance based on abandonment, the juvenile court considers "whether a parent has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship." *Michael J.*, 196 Ariz. at 249-50, ¶ 18; *see also* A.R.S. § 8-531(1). Abandonment is measured by a parent's conduct, not by his intent. *Michael J.*, 196 Ariz. at 249, ¶ 18. "Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment." A.R.S. § 8-531(1).

**¶13** Father argues that he did not abandon A.M. because he requested visitation from DCS on multiple occasions. However, the DCS unit psychologist determined that visits should be therapeutic because A.M. had negative reactions after visiting Father before his incarceration, and he had not visited her in more than a year. The DCS case manager advised Father that he would have to participate in services and maintain consistent contact with DCS before visits would be scheduled.

**¶14** Despite being informed of the requisites for therapeutic visits, Father failed to participate in services. He also failed to provide support for A.M., and he did not send her gifts, cards, or letters. The DCS case manager testified that Father did not have a normal parent-child relationship with A.M. as evidenced by her negative behaviors after her visits with him. Sufficient evidence supports the court's finding of abandonment.

## II. Best Interests

**¶15** To justify severance, the superior court must also find, by a preponderance of the evidence, that severance is in the best interests of the child. *Kent K.*, 210 Ariz. at 284, ¶ 22. "[A] determination of the child's best

interest must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). This finding requires the juvenile court to consider the totality of the circumstances, *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 99, ¶ 12 (App. 2016), and balances the parent's rights "against the independent and often adverse interests of the child in a safe and stable home life," *Kent K.*, 210 Ariz. at 286, ¶ 35. Severance is not "automatically . . . in a child's best interests just because the child is adoptable," but when "a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a juvenile court may find that termination of parental rights, so as to permit adoption, is in the child's best interests." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶¶ 12, 14 (2016).

**¶16** The court considered and carefully weighed the evidence and found that A.M.'s current placement is meeting all of her needs, there is a plan for adoption, and A.M. "[has] waited long enough for [Father] to make the necessary behavioral changes in order to properly care for [her]." The DCS case manager testified that A.M.'s current placement is safe, stable, and meets all of her needs. The placement intends to adopt A.M. and her half-sister. Finally, she testified that if the current placement was unable to adopt, A.M. is adoptable. This evidence is sufficient to support the superior court's best-interests finding.

## CONCLUSION

**¶17** For the foregoing reasons, we affirm the superior court's order terminating the parent-child relationship between Father and A.M.

